## BERRY PETROLEUM COMPANY, an Arkansas Corp. (Dissolved), et al., Plaintiffs-Appellants,

### v.

## ADAMS & PECK et al., Defendants-Appellees.

### No. 805, Docket 74–2588.

United States Court of Appeals, Second Circuit.

Argued April 25, 1975.

Decided June 23, 1975.

Edward Lester, Little Rock, Ark. (Lester & Shults, Little Rock, Ark., Oliver M. Clegg, Keith, Clegg & Eckert, Magnolia, Ark., Stephen Philbin, Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., on the brief), for plaintiffs-appellants Berry Petroleum Co., an Arkansas Corp. (Dissolved), J. E. O'Daniel, Yvonne Law, McAlester Fuel Company, and Gerland P. Patten & Co., Inc.

P. B. Konrad Knake, New York City (White & Case, New York City, on the brief), for defendant-appellee Arthur Young & Co.

R. B. Block, New York City (Pomerantz, Levy, Haudek & Block, New York City, on the brief), for defendants-appellees Kleiner Bell Group.

John J. Loflin, New York City (Lord, Day & Lord and R. Scott Greathead, New York City, on the brief), for defendant-appellee American Stock Exchange, Inc.

Holtzmann, Wise & Shepard, New York City, on the brief, for defendant-appellee Allen & Co., Inc.

Davis, Polk & Wardwell, New York City, Dearborn & Ewing, Nashville, Tenn., Burgoyne, Michels, Rose & Williamson, New York City, on the brief, for defendants-appellees Peter Huang, H. Igor Ansoff, and Gottfried von Meyern Hohenberg.

Before LUMBARD, HAYS and MULLIGAN, *Circuit Judges.*

LUMBARD, *Circuit Judge:*

Plaintiffs appeal from a summary judgment entered August 19, 1974, in the Southern District which dismissed their class-action complaint. They argue that the district court erred in concluding, *inter alia*, that their action was barred by the statute of limitations and that all but four of the named plaintiffs were also barred by the *res judicata* effect of a prior judgment with respect to 20 of the 28 defendants. We affirm the dismissal of the complaint.

This is a class-action suit which was brought December 15, 1972, in the Northern District of Texas. Berry Petroleum Co. (a dissolved Arkansas corporation) and four named plaintiffs (O'Daniel, Law, McAlester Fuel Co., and Gerland P. Patten & Co., Inc.) are suing on behalf of all those persons who owned Berry common stock as of October 16, 1968, and who exchanged such Berry stock for shares of Commonwealth United-

ed Corporation (CUC) on October 31, 1968, pursuant to a merger and reorganization agreement between Berry and CUC. The twenty-eight defendants are various officers, directors, and agents of CUC, underwriters, consultants, the American Stock Exchange, and Variety Magazine. The suit alleges violations of the federal securities law and pendant common law concepts in that the proxy statement furnished Berry shareholders prior to their approval of the merger contained misstatements of material facts and omissions of material facts and that the defendants engaged in other fraudulent conduct and disseminated other misleading information between January 1, 1968, and December 31, 1969.

This lawsuit (hereinafter *Berry II*) is intimately related to two other lawsuits which arose out of the CUC's financial problems. Berry and three of the other four named plaintiffs in this action (O'Daniel, Law, and Gerland P. Patten & Co.) had previously sued CUC and a wholly owned subsidiary in the Western District of Arkansas.[1] They brought that suit (hereinafter *Berry I*) as a class action on behalf of the same class involved here. The suit alleged that CUC misrepresented its financial condition to the Berry stockholders in violation of the federal securities laws. In his opinion below Judge McFadden concluded correctly "that *Berry I* and *Berry II* are in essence the same lawsuits with different defendants as targets." A settlement was reached in *Berry I* on October 2, 1972, under which the class defined therein received 54,365 shares of CUC stock and $325,000 in cash. *Berry II* was commenced about two and one-half months after this settlement was reached.

The other suit related to this case was a class action on behalf of all persons who acquired CUC securities for value between October 16, 1968, and August 1, 1969. This case (hereinafter the *Land* case) was brought in the Southern Dis-

---

1. Actually two suits were brought—one in 1970 and one in 1971, but they were later consolidated and will be treated as one suit.

trict of New York on August 27, 1969.[2] The defendants in that case included twenty of the defendants in the present action.[3] A stipulation of settlement in the *Land* case was signed in May 1972; the district court approved the settlement on November 29, 1972.[4] The *Land* settlement was approved two weeks prior to the filing of *Berry II.*

*Berry II* was originally brought in the Northern District of Texas, but it was transferred, pursuant to 28 U.S.C. § 1407, to the Southern District of New York on August 3, 1973, by the Judicial Panel on Multidistrict Litigation. *In re Seeburg-Commonwealth United Merger Litigation,* 362 F.Supp. 568 (1973). The Panel felt that *Berry II* should be consolidated with the remaining part of the *Land* action for coordinated pretrial proceedings. It also noted that some of the issues raised in *Berry II* (e. g., the question of whether the action was barred by the *Land* action settlement) could best be considered and decided by Judge McFadden who had a "first-hand familiarity with all aspects of this litigation." 362 F.Supp. at 571.

The two issues on this appeal are whether this action is barred by the statute of limitations and whether the action is barred by the res judicata effect of the *Land* settlement.[5]

## I. Statute of Limitations

■ This suit was brought under SEC rule 10b–5 and section 10(b) of the Secu-

rities Exchange Act of 1934. 15 U.S.C. § 78j(b). As there is no federal statute of limitations that applies to that section of the Act, a district court must look to state law to determine if a suit has been timely brought. *Saylor* v. *Lindsley,* 391 F.2d 965, 970 (2d Cir. 1968).

In this case the appropriate state law is the law of Texas (the forum state where this suit was initiated). Unfortunately, Texas has two statutes under which one might bring a suit alleging fraud in the sale of securities—one which has a two-year statute of limitations and one which has a three-year statute. The choice of the proper statute is of some importance in this case. *Berry II* was not commenced until December 15, 1972, and even plaintiffs admit that they knew or should have known of the alleged fraud by December 15, 1970. Thus, it is only if we decide, contrary to the decision of the district court, that the three-year statute applies here that we need reach the district court's alternative holding that the *Berry II* plaintiffs were barred from suing because they knew or should have known of the alleged fraud by December 15, 1969 (three years prior to their commencement of the suit).

### A.

■ The district court concluded that the three-year statute did not apply because the court felt that that statute was not a true statute of limitations.

---

**2.** Many other cases concerning CUC were consolidated with the *Land* case by the Judicial Panel on Multidistrict Litigation. See, e.g., 312 F.Supp. 909 (1970); 331 F.Supp. 552 (1971).

**3.** The defendants common to both actions are A. Bruce Rozet; Oliver A. Unger; Irving Goldstein; Sidney Kibrick; Richard A. Sarazan; Rodney W. Loeb; Arne Kalm; H. Igor Ansoff; Gottfried von Meyern Hohenberg; Howard D. Martin; Peter Gettinger; Kleiner, Bell & Co.; Kleiner, Bell & Co., Inc.; Burt Kleiner; Lionel Bell; Ralph Shapiro; Theodore Sayers; Peter Huang; Benjamin F. Breslauer; and Arthur Young & Co. There were five additional defendants in the *Land* action. The defendants in *Berry II* who were not defendants in *Land* are Adams & Peck; Allen & Co., Inc.; Ameri-

can Stock Exchange; Sol Stameshkin; Bryce Crider; Ely A. Landau; James A. Lewis Engineering; and Variety Inc.

**4.** One of the defendants, Arthur Young & Co., did not join in the settlement until August 16, 1973.

**5.** Judge McFadden also ruled that Berry was not a proper plaintiff because it suffered no damage itself since it immediately transferred the CUC shares it received in the merger to its stockholders. He therefore dismissed its claims on that ground. In addition, he held that the complaint failed to state a cause of action against the American Stock Exchange. In light of our disposition of the two main issues in the case, we have no occasion to discuss these subsidiary issues.

The three-year statute is contained in the Texas Securities Act which both establishes a cause of action for securities fraud and sets a three-year limit on the time within which suit has to be brought. Courts often consider such a limitation to be a time limitation on the right created, rather than a traditional statute of limitations which is a limitation on the time within which a suit must be brought on a right that never ceases to exist. While this distinction may have some utility in certain areas of the law,[6] we do not think that it should be considered in the determination of which statute of limitations applicable to state securities fraud claims should be used in rule 10b–5 actions.

The most important consideration in picking a state statute of limitations to apply to rule 10b–5 actions is to compare the state causes of action to a rule 10b–5 action and to choose the statute of limitations applicable to that state cause of action which is most similar to the federal cause of action under rule 10b–5 and which best effectuates the rule's purpose. *Hudak* v. *Economic Research Analysts,* 499 F.2d 996, 999 (5th Cir. 1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); *Sargent* v. *Genesco, Inc.,* 492 F.2d 750, 758 (5th Cir. 1974); *Parrent* v. *Midwest Rug Mills, Inc.,* 455 F.2d 123, 126 (7th Cir. 1972); *Vanderboom* v. *Sexton,* 422 F.2d 1233, 1237–40 (8th Cir.), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970). In this way investors have at least as much time to sue under the federal statute as they do under the most analogous state statute. Since the purposes of the securities law are remedial, this best effectuates

the congressional policy to provide redress in federal courts for victims of securities fraud. Thus, it is necessary to compare and contrast the substantive provisions of the two Texas statutes with the substantive provisions of rule 10b–5.

Article 581–33 of the Texas Securities Act, which contains a three-year statute of limitations, provides:

> A. Any person who . . . (2) Offers or sells a security . . . by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made not misleading (when the person buying the security does not know of the untruth or omission, and who in the exercise of reasonable care could not have known of the untruth or omission) is liable to the person buying the security from him . . . .

Section 27.01(a) of the Texas Business and Commerce Code, V.T.C.A., provides:

> Fraud in a transaction involving real estate or stock in a corporation or joint stock company consists of a (1) false representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing that person to enter into a contract; and (B) relied on by that person in entering into that contract . . . .

While no specific limitation applies to section 27.01, Texas courts have held that Texas's two-year limitation on actions for debt not evidenced by a written contract applies to fraud actions. See Tex.Rev.Stat. art. 5526; *Richardson* v. *Salinas,* 336 F.Supp. 997, 1000 (N.D.Tex.

---

**6.** The distinction is usually made in conflict-of-law situations when a court must decide whether to apply the forum's statute of limitations or the statute of limitations of the jurisdiction under whose laws the cause of action arose. Usually the forum's statute is applied. However, when a statutorily created right is involved, some courts have viewed a statutory limitation on that right as destroying the right itself when the time to sue expires rather than simply forbidding suit on a right that continues to exist. In such a situation, the forum court would decline to apply its three-year statute if the jurisdiction where the right was created limited actions on the right to two years. This is in contrast to typical common law cases where the court would apply its statute of limitations on contract actions, for example, even if it was longer than the statute of limitations applied by the place where the contract was signed and performed. See Restatement (Second) of Conflict of Laws §§ 142, 143 (1971).

1972); *White* v. *Bond*, 362 S.W.2d 295 (Tex.1962).

Finally, SEC rule 10b–5, 17 C.F.R. 240.10b–5, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

A Texas district court in *Richardson* v. *Salinas, supra,* did compare the two Texas statutes with rule 10b–5 and it concluded that the Texas Securities Act (TSA) was more similar to rule 10b–5 than was section 27.01. See also Bordwine, Civil Remedies under the Texas Securities Laws, 8 Houston L.Rev. 657, 665 (1971). We agree.

There are three differences between the substantive provisions of the TSA and rule 10b–5. First, the TSA only gives buyers of securities a right of action while both buyers and sellers may sue under rule 10b–5. For our purposes this difference is not important since we are dealing with a suit by buyers.

The second difference is that the TSA explicitly imposes a duty of care on purchasers while rule 10b–5 contains no such provisions. Since rule 10b–5 is often interpreted to include such a duty of care, this difference is not important, if it exists at all. See 2 A. Bromberg, Se-

curities Law—Fraud: SEC Rule 10b–5, § 8.4(650)–(659) (1971).

Finally, the TSA does not require that a plaintiff prove fault on the part of the defendant, see Bordwine, *supra,* at 674, while it appears that the Fifth Circuit [7] requires proof that a defendant was guilty of something between mere negligence and common law scienter in rule 10b–5 actions:

"There is no question of requiring plaintiffs to prove scienter in its strict common law sense—that the defendants made statements they either knew to be false or knew they had no basis for believing were true. . . . The trend in the federal courts has been toward a more relaxed test. . . . With scienter requirements in a state of flux in the Courts of Appeals, we do not view this as the proper occasion to draw the bottom line on the degree of scienter required in this Circuit. Suffice it to say that some culpability beyond mere negligence, is required."

*Smallwood* v. *Pearl Brewing Co.,* 489 F.2d 579, 606 (5th Cir.), *cert. denied,* 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974). In this respect, the TSA provides a plaintiff buyer with a broader cause of action than does rule 10b–5.

The elements of an action under section 27.01 also differ from those required in a rule 10b–5 action. Section 27.01 is derived from common law fraud concepts. *Richardson* v. *Salinas, supra,* at 1000. Although the statute does not seem to require scienter in all cases, see Tex.Bus. & Com.Code, §§ 27.01(b)–(c); Bordwine, *supra,* at 664, it appears that some Texas cases require proof of scienter to establish actionable fraud. See, e. g., *Brooks* v. *Parr,* 507 S.W.2d 818, 820 (Tex.Civ.App.1974). Thus, it is difficult to determine whether an action under section 27.01 is broader or narrower than one under rule 10b–5 in this respect, al-

---

7. Since this case was brought in a district court in the Fifth Circuit, the substantive law of that circuit is the law we must consider here. See *In re Plumbing Fixtures Litigation,* 342 F.Supp. 756, 758 (Jud.Pan.Mult.Lit.1972), citing *Van Dusen* v. *Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

though it appears that the section 27.01 action may be narrower than that under the TSA. See Bordwine, *supra*, at 664, 674.

■ A second difference between section 27.01 and rule 10b–5 is that section 27.01 explicitly requires reliance by the purchaser. On the other hand, the Supreme Court has ruled that positive proof of reliance is not necessary where the alleged violation of rule 10b–5 is primarily a failure to disclose material facts that a reasonable investor might have considered important in deciding whether to acquire stock. *Affiliated Ute Citizens* v. *United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). Reliance is not required in a TSA action. Bordwin, *supra*, at 671.

Finally, section 27.01 allows a plaintiff to recover the difference between the value of the stock as represented and its actual value, Tex.Bus. & Com.Code § 27.-01(b), while damage remedies in rule 10b–5 and TSA actions are generally limited to rescission or out-of-pocket damages. 3A Bromberg, *supra*, § 9.1, at 226–27; Tex.Rev.Stat. art. 581–33(A).

■ While neither cause of action under the Texas statutes is identical to the cause of action established by rule 10b–5, we think that the cause of action under the TSA, though broader, more nearly approximates that under rule 10b–5. The language of the TSA is almost identical with that of rule 10b–5(b). Thus, we conclude that the three-year statute of limitations should be applied to suits by buyers in Texas under rule 10b–5.

A consideration of the consequences of adopting the two-year statute lends support to our conclusion. If we applied the two-year statute, Texas buyers suing under rule 10b–5 would be subject to a shorter statute of limitations than if they sued under the TSA even though the TSA provides a broader cause of action than does rule 10b–5. As a result a class of plaintiff buyers in Texas would be barred from federal court even though they (1) could satisfy the requirements of a 10b–5 action and (2) had a timely cause of action under the TSA in

state court. We do not think that this result would be consistent with the furtherance of the federal policy against securities fraud.

■ A person with a cause of action under rule 10b–5 should be able to bring suit in a federal court if he also has a timely cause of action in the state court. Thus, when one state statute allowing securities fraud suits provides a broader cause of action for buyers than does rule 10b–5 and a second state statute, and at the same time has a longer statute of limitations than the second state cause of action, we think that the statute of limitations associated with the broader cause of action should be applied to rule 10b–5 actions brought in the federal court in that state.

The result here is particularly appropriate in light of the fact that the two-year limitation was implied by the Texas courts while the three-year limitation was expressly adopted by the Texas legislature for use in securities fraud actions. This suggests that the underlying Texas policies against securities fraud (which appear to be similar to those of the federal government) are most accurately expressed in the Texas Securities Act. See *Richardson* v. *Salinas, supra,* at 1001.

■ Moreover, as the Ninth Circuit recently noted, "[T]he broad remedial policies of the federal securities laws are best served by a longer, not a shorter, statute of limitations." *United Calif. Bank* v. *Salik*, 481 F.2d 1012, 1015 (9th Cir.), *cert. denied*, 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973). Accord, *Azalea Meats, Inc.* v. *Muscat*, 386 F.2d 5, 8 (5th Cir. 1967). Thus, the district court should have applied a three-year statute of limitations to plaintiffs' action.

**B.**

■ Reversal is not required, however, because we agree with the district court that even if the three-year statute is applied, the suit is barred because the fraud on which it is based was known or should have been known to plaintiffs

more than three years prior to their commencement of their suit on December 15, 1972. *Klein* v. *Shields & Co.,* 470 F.2d 1344, 1346–47 (2d Cir. 1972). Plaintiffs' claim that they did not know, or could not have been expected to know, of the alleged fraud until a subsidiary of CUC (Sunset Petroleum) filed for bankruptcy in May 1970 or until an appraisal of Sunset's assets was released in September 1970 is simply without merit.

This court has previously noted that the time from which the statute of limitations begins to run is not the time at which a plaintiff becomes aware of all of the various aspects of the alleged fraud, but rather the statute runs from the time at which plaintiff should have discovered the general fraudulent scheme. "[T]he statutory period . . . [does] not await appellant's leisurely discovery of the full details of the alleged scheme." *Klein* v. *Bower,* 421 F.2d 338, 343 (2d Cir. 1970).

Plaintiffs set out in their complaint many allegations of fraud about which they do not even attempt to argue that they could not have known prior to December 15, 1969. For example, the first allegation of fraud in the complaint concerns a January 1968 transaction whereby CUC agreed to sell convertible debentures to several of the defendants. The complaint also alleges fraud with respect to an August 1968 agreement under which CUC was to buy shares of Seeburg Corp., with respect to a press release concerning CUC's financial condition at the time it was negotiating to purchase a controlling interest in MGM, with respect to CUC's earnings statement of September 1968, and with respect to several other events or factors other than the overvaluation of Sunset's oil properties.

Plaintiffs' failure to claim they did not know or could not have known about these other aspects of the alleged fraud is understandable. Other facts alleged in their own complaint which they must have known prior to December 15, 1969, should have put them on notice. According to that complaint, the American Stock Exchange suspended trading in CUC stock on July 22, 1969, and the Securities and Exchange Commission (SEC) suspended trading in CUC stock in the over-the-counter market on August 1, 1969. On July 22 the complaint indicates that CUC stock was selling for $8.125 a share. By August 1, it had declined to about $4.50 a share and in late December it had fallen further to about $2.50 a share. The *Land* action was commenced in August 1969, other private actions followed, and the SEC obtained a consent order against CUC in October 1969. The SEC action was publicized in financial newspapers. See, e. g., N.Y. Times, Oct. 3, 1969, at 63, col. 4; Wall St.J., Oct. 3, 1969, at 28, col. 2. Much of the fraud alleged here was also alleged in the *Land* case.[8] Since those plaintiffs discovered the fraud, there is no doubt that the fraud was discoverable prior to December 5, 1969.[9]

In light of the trading suspensions, the precipitous decline in the price of CUC stock, and the other lawsuits by the SEC and private parties, we think that Judge McFadden correctly concluded that plaintiffs with reasonable diligence could and should have discovered the alleged fraud prior to December 15, 1969. *Klein* v. *Shields & Co., supra,* 470 F.2d at 1347; *Azalea Meats, Inc.* v. *Mus-*

---

**8.** The similarity between the allegations in *Berry II* and *Land* was noted by the Judicial Panel on Multidistrict Litigation when it ordered the transfer of *Berry II* to the Southern District. See *In re Seeburg-Commonwealth United Merger Litigation,* 362 F.Supp. 568, 571 (1973).

**9.** With regard to plaintiffs' claim that they could not have known about Sunset's difficulties until the middle of 1970, we note that a proxy statement circulated by CUC at the beginning of December 1969 for a December 19, 1969 stockholder's meeting stated that the Board of Directors had "authorized negotiations for the sale of substantially all real estate and oil and gas properties. Such sales, in the opinion of management, may result in substantial losses to Commonwealth aggregating *millions* of dollars." Thus, plaintiffs inaccurately allege that a part of the fraud (the overvaluation of Sunset properties) was not discoverable in the exercise of due diligence more than three years prior to December 15, 1972.

*cat, supra,* 386 F.2d at 8–9. See also *Hupp* v. *Gray,* 500 F.2d 993, 996–97 (7th Cir. 1974) 60% decline in stock price should have put plaintiff on notice of fraud). Since the basic facts which lead us to uphold Judge McFadden's decision appear in plaintiff's complaint, this was an appropriate case for summary judgment. See *Klein* v. *Bower, supra,* 421 F.2d at 343–44; *Klein* v. *Shields & Co., supra;* *Rickel* v. *Levy,* 370 F.Supp. 751, 756 (E.D.N.Y.1974).[10]

## II.

Even if this suit were not barred by the statute of limitations, the district court correctly concluded that all class members but four of the named plaintiffs would be barred from prosecuting their action against any defendant who was also a defendant in *Land* by the res judicata effect of the *Land* settlement.

 The *Land* class was certified on February 2, 1972, and was defined to include all persons who acquired CUC stock for value from October 16, 1968, to August 1, 1969. Under the Berry-CUC merger agreement the Berry stockholders received their CUC stock on October 31, 1968, which is within the time period defined for the *Land* class. The fact that the agreement to merge was made in August 1968 is of no relevance, especially since approval of the merger by Berry stockholders, which was required by Arkansas law, did not occur until aft-

er October 16, 1968. In any event, the key date is the date the CUC stock was acquired and that date was October 31, 1968, which was within the period defined in the class order.[11] The class order provided that notice be sent to all class members and that such members had until April 10, 1972, to ask to be excluded from the class. Failure to opt out of the class by that date would mean that the class member would be bound by the result of the class action suit. See Fed.R.Civ.P. 23(c)(2).[12]

On April 4, 1972, the attorneys for the named plaintiffs in *Berry I* filed a request for exclusion from the *Land* action on behalf of the *Berry I* class. At that time no class order had been entered in *Berry I.* In fact, such an order was not entered until July 26, 1972, which was two months after the *Land* settlement stipulation had been signed.

 We reject the suggestion that the attorneys in *Berry I* could request exclusion from the *Land* case for persons other than the named plaintiffs they represented in *Berry I.* All of the other members of the *Berry I* class were members of the *Land* class and were notified of their right to request exclusion and none of them did. At that time those persons had not been judicially determined to be members of the *Berry I* class and had not been notified of that action. It would make no sense to hold

10. Our reliance principally on facts alleged in plaintiffs' complaint in concluding that plaintiffs should have discovered the alleged fraud prior to December 15, 1969, makes this case unlike *Puttkammer* v. *Stifel Nicholaus & Co.,* 365 F.Supp. 495 (N.D.Ill.1973) where on a motion to dismiss the district court accepted as true the plaintiff's claim that the fraud had been concealed. Here plaintiffs' complaint itself demonstrates that the fraud should have been discovered by December 15, 1969.

11. The decision of the Judicial Panel on Multidistrict Litigation not to combine *Berry I* and *Land* does not establish that the *Berry I* plaintiffs were not members of the *Land* class. See *In re Seeburg-Commonwealth United Merger,* 333 F.Supp. 911, 912 (1971). The Panel was aware of the fact that the *Berry I* plaintiffs were included in the class that the *Land* action sought to represent. It declined to transfer *Berry I* because *Berry I* focused on a different

transaction than that stressed in *Land* and because *Berry I* seemed closer to trial. Neither reason supports the conclusion that the Panel ruled (assuming it somehow could) that the class in *Berry I* was separate from the class in *Land.* The fact that the *Berry I* attorneys later attempted to opt out of *Land* is evidence that they did not think the Panel ruled on this issue.

12. Rule 23(c)(2) provides in part: "[T]he court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date [and] (B) the judgment, whether favorable or not, will include all members who do not request exclusion . . . ."

that the named *Berry I* plaintiffs, not yet officially representing the alleged class in *Berry I*, could request exclusion for prospective members of that class from the *Land* class action when the *Berry I* class had not yet been certified, when the prospective members of *Berry I* had not yet had an opportunity to opt out of *Berry I* and when the prospective members of *Berry I* had chosen not to request exclusion from *Land* following receipt of individual notice. We agree with Judge McFadden that to allow such action would lead to chaos in the management of class actions. The only way to avoid such chaos is to require that opting out of a class action, like the decision to participate in it, must be an individual decision.

This conclusion is reinforced by recent decisions of the Supreme Court and of this court which have stressed the importance that individual members of a class action be provided notice, regardless of cost, so that they may intelligently choose whether to continue in the suit as class members. See, e. g., *Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), affg. on this point 479 F.2d 1005 (2d Cir. 1973). As the Supreme Court noted in *Eisen* this requirement of notice is designed to fulfill the due process requirement that, where possible, a person should be notified of the existence of a lawsuit before he is bound by a judgment in that lawsuit. See 417 U.S. at 173–75, 94 S.Ct. 2140; *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

Here the *Berry I* class members had received notice of the *Land* action and had not requested exclusion from the *Land* class; they had not received notice of the *Berry I* action. We think that it would be contrary to the Supreme Court's decisions concerning notice to allow the *Berry I* attorneys to remove the *Berry I* class from the *Land* class without notice to the *Berry I* class. The decision regarding which of two classes a plaintiff wishes to belong to is as important as the decision whether he will re-main in a class or proceed on his own. That decision must be made by the individual after notice of his options. In the situation where there are two possible classes to which a person might belong, but only one has been certified, this means that the attorneys for the uncertified class will have to take steps to notify those persons who are prospective members of the uncertified class of the existence of the uncertified class action and request those persons to authorize the attorneys to withdraw them from the certified class. The attorneys for the prospective class will be able to request exclusion from the certified class only for those persons who specifically authorize them to do so.

■ While it is true that the Supreme Court recently wrote that "the claimed members of the class [stand] as parties to the suit until and unless they receive notice thereof and cho[o]se not to continue." *American Pipe & Constr. Co.* v. *Utah*, 414 U.S. 538, 551, 94 S.Ct. 756, 765, 38 L.Ed.2d 713 (1974), we do not think that this passage supports plaintiffs' position here. It simply stands for the proposition that plaintiffs in *Berry II* (except for four of the named plaintiffs) were members of both the *Land* class and the *Berry I* class and therefore bound by the settlements reached in each of those cases.

■ Finally, in rejecting plaintiffs' position we find that it is irrelevant that most of the *Berry I* class members participated in the *Berry I* settlement rather than in the *Land* settlement. Likewise we reject plaintiffs' suggestion that defendants waived their right to object to the notice of exclusion by allowing plaintiffs' attorneys to negotiate a settlement for the *Berry I* class. The *Land* and *Berry I* settlements were negotiated at about the same time and were apparently thought to be consistent with each other. The fact that the parties may have found it convenient to dispose of the claims in this way does not preclude defendants from pleading res judicata when a later suit is brought covering the claims that they thought were settled.

Indeed, the release signed by *Berry I* class members provided that they gave up their rights to participate in the *Land* settlement thus suggesting that the *Berry I* plaintiffs were always considered by the parties to be members of the *Land* class and should be barred by any res judicata effects of the *Land* settlement of that case.

█ Thus, all of the plaintiff class except Berry, O'Daniel, Law and Gerland P. Patten Co., Inc., are barred from suing the twenty *Land* defendants listed in note 3 *supra* because of the res judicata effect of the *Land* settlement.[13]

Affirmed.

---

**13.** The fact that Arthur Young & Co. joined in that settlement subsequent to the filing of *Berry II* is irrelevant for res judicata purposes. The important fact is that the *Land* judgment was prior to a judgment in this case. Restatement of Judgments § 43 (1942). Allen & Co. participated in the *Land* settlement but it was never a defendant in the *Land* action. Whether or not it could raise the res judicata defense depends on its degree of participation in the settlement proceedings and on the notice that plaintiffs had of its participation. See Restatement of Judgments § 84 (1942). The record does not allow us to make such a determination.