**In re GENERAL DEVELOPMENT CORPORATION BOND LITIGATION.**

No. 91 Civ. 5477 (LMM).
MDL 890.

United States District Court,
S.D. New York.

Sept. 18, 1992.

---

**1144**

Bruce E. Gerstein, Scott W. Fisher, Garwin Bronzafter Gerstein & Fisher, New York City, for plaintiffs.

Lewis N. Brown, Gilbride Heller & Brown, Miami, Fla., for defendant KPMG Peat Marwick.

Bruce D. Angiolillo, James J. Hagan, Simpson Thatcher & Bartlett, New York City, for defendants Merrill Lynch, Pierce, Fenner & Smith and PaineWebber Inc.

Robert T. Wright, Mershon Sawyer, Johnston Dunwody & Cole, Miami, Fla., for defendants Reubin O'D. Askew, Peter R. Brinckerhoff, Howard L. Clark, Edwin I. Hatch, Marshall Manley, Eben W. Pyne, George T. Scharffenberger, Charles J. Simons.

## MEMORANDUM AND ORDER

McKENNA, District Judge.

By Orders dated July 8, 1992, 800 F.Supp. 1128 (S.D.N.Y.1992), this Court dismissed as timebarred the federal causes of action asserted in two out of three purported class actions previously consolidated for pre-trial proceedings pursuant to Fed. R.Civ.P. 42: *Harold Menowitz v. David F. Brown, et al.* ("*Menowitz*"), and *Stanton Sprizler v. David F. Brown, et al.* ("*Sprizler*"), and declined to exercise supplemental jurisdiction over non-federal claims asserted in those actions. As indicated in the Court's Memorandum and Order of July 8, 1992 (hereinafter the "July Memorandum"), both *Menowitz* and *Sprizler* were originally filed in the Southern District of New York; *Harry Drooker v. PaineWebber, Inc., et al.* ("*Drooker*"), the third action affected by the pre-trial consolidation, was originally filed (on or about March 12, 1991) in the Southern District of Florida, and was transferred here in August 1991, by order of the Judicial Panel on Multidistrict Litigation.

The Court's analysis of the limitations period applicable to the *Menowitz* and *Sprizler* plaintiffs' claims under Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78j(b), is set forth in the July Memorandum, familiarity with which is assumed. At page 1135 of the July Memorandum appears a footnote reading, in pertinent part, as follows:

> The parties are directed to brief the issue of whether the law that determines the timeliness of the *Drooker* Plaintiffs' claims under Section 10(b) of the 1934 Act is the law that existed in this or another jurisdiction on June 19, 1991. Any party taking the position that the applicable law is *not* that of the Second Circuit is further directed to set forth "the limitation period provided by the laws applicable in the [relevant] jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991."

(at 1135 n. 6) (citation omitted). In this Memorandum and Order, the Court addresses memoranda of law submitted by the parties in response to the Court's request for supplemental briefs, as set forth immediately above.

The alternative to application of Second Circuit law is of course the law of the Eleventh Circuit, in which the Southern District of Florida is located. Because all parties who have briefed the issue appear to agree on the point, the Court assumes (without deciding) that the limitations period applicable to a Section 10(b) claim pending in the Eleventh Circuit as of June 19, 1991, was adopted from the Florida "blue sky" law and required that such suit be commenced within two years of the date on which facts giving rise to the cause of action were (or should, with reasonable diligence, have been) discovered, and in any event not more than five years from the date of the violation alleged.

The parties' agreement on the foregoing point notwithstanding, the applicability of Eleventh Circuit law to the assessment of the *Drooker* Plaintiffs' Section 10(b) claims—and the timeliness of those claims measured by that standard—are very much in dispute. For the reasons that follow, the Court concludes that the timeliness of the *Drooker* Plaintiffs' Section 10(b) claims is governed not by the Eleventh Circuit's two- and five-year period, but rather by the one- and three-year period announced in *Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir.1990). Accordingly, evaluation of arguments addressed to the time-bar analysis under Eleventh Circuit law is unnecessary here.[1]

*Discussion*

The question that the Court has directed briefed arises out of the combined effect of *Drooker*'s transfer from the Southern District of Florida, pursuant to 28 U.S.C. § 1407, and Congress' enactment of the Federal Deposit Insurance Corporation Improvement Act of 1991 (hereinafter the "F.D.I.C. Improvement Act"), of which Section 476 provides that "[t]he limitation period for any private civil action implied under section 10(b) of [the 1934 Act] that

was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991." Pub.L. No. 102–242, § 476, 1991 U.S.C.C.A.N. (105 Stat.) 2236. As the Court noted in the July Memorandum, Section 476 precludes full retroactive application of the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, — U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), and it also operates to reinstate certain actions dismissed under *Lampf* that were filed before the date of that decision and were timely under the statute of limitations then in effect.

Like the *Menowitz* and *Sprizler* actions, the *Drooker* action was commenced before June 19, 1991, and the quoted provision of the F.D.I.C. Improvement Act squarely applies. Unlike either of the other two actions with which it has been consolidated, however, *Drooker* was commenced by the filing of a complaint in a jurisdiction outside of the Second Circuit, and the assessment of its timeliness as measured by the "limitation period provided by the laws applicable in the jurisdiction ... as such laws existed on June 19, 1991," therefore requires a more careful parsing of the statute than would otherwise be called for: in the context of a transferred multi-district action such as *Drooker*, the question (which appears to be one of first impression in this Circuit) is whether the quoted language of the F.D.I.C. Improvement Act is to be understood to refer to laws applicable in the transferor or in the transferee jurisdiction as of June 19, 1991. Defendants' proffered answer to this question has the appeal of relative simplicity. Defendants urge that resolution of the statutory ambiguity in favor of Second Circuit law is required by the teaching of *In re Pan American Corp.*, 950 F.2d 839, 847 (2d Cir.1991), and bolstered by the D.C.

---

**1.** Nor need the Court address at length Defendants' argument that the consolidation of *Drooker* with *Sprizler* and *Menowitz* effectively obliterated both *Drooker* and *Sprizler*, "leaving *Menowitz* the sole operative Complaint, and leaving the issue of which law determines the timeliness of the *Drooker* Plaintiffs' claims

moot." (Defs.' Mem. at 2–3.) The consolidation to which Defendants refer was for *pretrial* proceedings only (*see* 91 Civ. 0594, *Pretrial Order No. 1*, Oct. 23, 1991), and it is simply not the case that "[f]or purposes of this litigation, *Drooker* ceased to exist on that date." (Defs.' Mem. at 2.)

Circuit's discussion in *In Re Korean Air Lines Disaster,* 829 F.2d 1171, 1175–76 (D.C.Cir.1987), *aff'd on other grounds sub nom. Chan v. Korean Air Lines, Ltd.,* 490 U.S. 122, 109 S.Ct. 1676, 104 L.Ed.2d 113 (1989), to which the decision in *Pan American* refers. As Defendants would have it, this Circuit's concurrence in the emerging view that matters of federal law should be decided by a federal transferee court in accordance with its own interpretation of the ideally "single body of [federal] law," *H.L. Green Co. v. MacMahon,* 312 F.2d 650, 652 (2d Cir.1962), *cert. denied,* 372 U.S. 928, 83 S.Ct. 876, 9 L.Ed.2d 736 (1963), without deference to any contrary interpretation of a transferor circuit, compels the reading of the F.D.I.C. Improvement Act Defendants favor. Because this Court is competent to undertake analysis of the *Drooker* Plaintiffs' federal securities law claims, Defendants reason, the measure of the timeliness of *Drooker*'s Section 10(b) claims is the one- and three-year period provided by the laws in effect in this jurisdiction on June 19, 1991, which operated to bar the Section 10(b) claims in *Menowitz* and *Sprizler.*

Plaintiffs urge a contrary construction of the language of the F.D.I.C. Improvement Act in the multi-district transfer context, arguing that a limitations period—where unprescribed by federal statute, and thus non-inherent in a federal claim—is traditionally "borrowed" by the federal court from an analogous state statute and retains its state law character. In this view, the rule of *Van Dusen v. Barrack,* 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)—whether or not applicable to questions of purely federal law—is squarely implicated by a choice of limitations periods in the context of a transferred federal claim such as the one at issue here: "where a federal statutory claim has no prescribed limitations period, the choice of a limitations period is a *state* law question, and *Van Dusen* binds the transferee court

to apply the limitations laws of the transferor state." (Pls.' Mem. at 3.)

Plaintiffs' position finds some support in case law and in commentary. Rejecting a petitioner's contention that the transfer of his Section 10(b) claim would bar his suit—on statute of limitations grounds—in the transferee district, the Second Circuit in *H.L. Green* declined to set aside a transfer pursuant to 28 U.S.C. § 1404. Although a litigant is entitled to no particular interpretation of the *federal* laws governing his cause of action, the Circuit noted, transfer from one judicial district to another should not affect the privileges—including state law-derived limitations periods—that appropriately follow from a plaintiff's initial choice of venue.

The Court's analysis in *H.L. Green* is not extensive, and its conclusion that "the statute of limitations of the transferor state should continue to apply" to a federal cause of action after transfer pursuant to 28 U.S.C. § 1404(a) apparently follows from a premise not explicit in the text of the opinion—the premise, that is, that a private cause of action judicially implied under Section 10(b) of the 1934 Act *necessarily* is governed by a limitations period adopted from an analogous state statute, and that the period so derived is thus also necessarily a creature of state law. To similar effect is the brief analysis in *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402 (2d Cir.1975), an action transferred from the Northern District of Texas pursuant to an order of the Judicial Panel on Multidistrict Litigation. "As there is no federal statute of limitations that applies [to Section 10(b) of the 1934 Act]," the *Berry* Court wrote, "a district court must look to state law to determine if a suit has been timely brought. In this case the appropriate state law is the law of Texas (the forum state where this suit was initiated)." 518 F.2d at 406 (citation omitted).[2]

---

**2.** As this Court noted in the July Memorandum, a footnote in *Berry* suggests that even insofar as questions of purely federal law are concerned, a transfer pursuant to 28 U.S.C. § 1407 requires application by the transferee court of the substantive law of the transferor circuit. 518 F.2d

at 408 n. 7. This sentence in *Berry* has been disapproved by commentators, and appears (in light of *Pan American* ) to have been abandoned by the Second Circuit. Although the *Berry* footnote is cited by Plaintiffs in their Memorandum, the view expressed is one that neither Defen-

The question of the timeliness of *Drooker*'s Section 10(b) claims is no more appropriately disposed of, in this Court's view, by facile reference to older cases such as *Berry* and *H.L. Green* than by the Circuit's more recent language in *Pan American.* As previously noted, the matter at issue here arises in the context of an action, transferred into this district pursuant to 28 U.S.C. § 1407, to which the provisions of the F.D.I.C. Improvement Act apply, and it is in connection with the construction of the language of that statute that the analysis of the limitations period applicable to *Drooker*'s Section 10(b) claims begins. Because the context in which arguments addressed to *Drooker*'s timeliness arise distinguishes this case from Second Circuit precedent addressed by all the parties—and more particularly because Supreme Court precedent casts into doubt some of the basic premises upon which the discussion of statutory limitations periods in such cases as *Berry* and *H.L. Green* depends—this Court considers afresh the analysis of limitations periods for federal causes of action urged by Plaintiffs, and the applicability to such periods, in the multidistrict transfer context, of the *Van Dusen* rule.

 Plaintiffs' essential argument, of course, turns on their characterization of the choice of limitations periods for claims statutorily implied under Section 10(b) of the 1934 Act as questions of state law. Although Plaintiffs' ultimate conclusion—that *Van Dusen* binds a transferee court in such cases to apply the limitations laws of the transferor—finds support in case law, their premise—that the choice of a limitations period is itself a question of state law—does not. Persuasive authority, in fact, is to the contrary: "[a]s we [have previously] recognized ... the choice of a limitations period for a federal cause of action is itself a question of federal law." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 159 n. 13, 103 S.Ct. 2281, 2289 n. 13, 76 L.Ed.2d 476 (1983) (citation omitted). As the Supreme Court has made clear in recent years, that question may be decided in the traditional manner, by reference to the limitations periods provided by analogous or near-analogous state laws, or it may be decided in favor of a federal limitations period, as in *Ceres Partners*, or indeed (although rarely) in favor of no limitations period at all.

"[T]he Court has not mechanically applied a state statute of limitations simply because a limitations period is absent from the federal statute. State legislatures do not devise their limitations periods with national interests in mind, and it is the duty of the federal courts to assure that the importation of state law will not frustrate or interfere with the implementation of national policies."

*DelCostello*, 462 U.S. at 161, 103 S.Ct. at 2289 (quoting *Occidental Life Insurance Co. v. Equal Employment Opportunity Commission*, 432 U.S. 355, 367, 97 S.Ct. 2447, 2454, 53 L.Ed.2d 402 (1977) (no time limitations imposed on enforcement suits brought by E.E.O.C.)).

Theoretically, of course, so much does not entirely dispose of Plaintiffs' argument: although the federal courts' *choice* of limitations periods in circumstances such as those at issue here is certainly a federal matter, the period—once chosen—could conceivably retain the characteristic of state law. But this would be anomalous indeed in light of precedent such as the above-quoted passage from *DelCostello;* where the provisions of an analogous *federal* statute are borrowed, one could not fairly say that the resulting limitations period is a creation of state law—clearly it is not. Similarly, where the choice is made that a federal cause of action should be governed by no limitations period at all, there is no state law question implicated in the sense urged by Plaintiffs. Although the choice of limitations periods borrowed

---

dants nor Plaintiffs here seek to advance. The proposition for which Plaintiffs apparently intend citation of *Berry*—that federal actions transferred pursuant to 28 U.S.C. § 1407 continue after transfer to be governed by the limitations period applicable in the transferor cir-

cuit—is, however, a view approved by Professor Marcus, in a paragraph of *Conflicts Among Circuits and Transfers Within the Federal Judicial System,* 93 Yale L.J. 677 (1984) (cited in the July Memorandum) to which Plaintiffs have drawn the Court's attention.

from analogous state statutes is the traditional choice and does remain the norm, *DelCostello*, 462 U.S. at 171, 103 S.Ct. at 2294, a standard so selected is, in this Court's view, no state law matter in Plaintiffs' sense but at most a kind of hybrid—derived from state law, but ultimately integral to the federal cause of action whose temporal parameters it is has been chosen to circumscribe.

In this Court's view, in short, it follows from the Supreme Court's recognition that "the choice of a limitations period for a federal cause of action is itself a question of federal law," 462 U.S. at 159 n. 13, 103 S.Ct. at 2306 n. 13, from its recognition that "[s]tate legislatures do not devise their limitations periods with national interests in mind," 432 U.S. at 367, 97 S.Ct. at 2455, and most particularly from the *ideal* of an integrated body of federal law, that the limitations periods that govern federal causes of action—from wherever derived, and whether created in the first instance by Congress or adopted by the federal courts as "a phase of fashioning remedial details where Congress has not spoken," *Holmberg v. Armbrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946),—are *not* matters of state law in any meaningful sense and should not, in the transfer context, implicate *Van Dusen* principles.[3]

■ On the foregoing reasoning, the *Drooker* Plaintiffs' Section 10(b) claims would or would not have been timely, as originally filed in the Southern District of Florida, not as a matter of Florida state law but rather as a matter of federal—i.e. Eleventh Circuit—law, and this would have been so notwithstanding the fact that when the Complaint in *Drooker* was filed in March 1991, the limitations period applicable to private Section 10(b) claims in that judicial district was a standard adopted from the provisions of the Florida blue sky laws. Following transfer of the *Drooker* Plaintiffs' federal cause of action, pursuant to 28 U.S.C. § 1407, to the Southern District of New York, no legitimate interest remained in the continuing application of the limitations period selected by the Eleventh Circuit to govern Plaintiffs' claims; accordingly, in this Court's view, the limitations period applicable to *Drooker* after transfer was that which was part and parcel of the Second Circuit's view of private Section 10(b) claims as of the time of filing of the *Drooker* Complaint. All of that said, it seems to this Court clear that the best reading of the F.D.I.C. Improvement Act's phrase "laws applicable in the jurisdiction," as it applies to a complaint (such as the one in *Drooker*) filed before the date of the decision in *Lampf* and transferred here, is that the jurisdiction referred to must be the one in which the federal transferee court sits. If that is so, then the limitations period that governs the *Drooker* Plaintiffs' Section 10(b) claims is that provided by the laws in effect in this Circuit as of June 19, 1991—i.e., the one- and three-year period set forth in *Ceres Partners*.[4] Accordingly, the *Drooker* Complaint (including claims arising under 15 U.S.C. § 78j(b)), having been filed in March 1991, is dismissed for the reasons set forth in the July Memorandum with respect to the Complaints in *Menowitz* and *Sprizler*.

SO ORDERED.

---

**3.** Such a conclusion is not inconsistent with diversity cases such as *Ferens v. John Deere Co.*, 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990), and *Spar, Inc. v. Information Resources, Inc.*, 956 F.2d 392 (2d Cir.1992).

**4.** Although no such allegation appears in the *Drooker* Complaint, counsel for Plaintiffs represents that Drooker testified at his deposition that he himself first learned of the bond issue only two to three months before his purchase of the bonds, which purchase he maintains occurred on November 1, 1989. The timeliness of the complaints in *Drooker, Menowitz,* and *Spriz-*

*ler* having arisen in the context of Defendants' motions to dismiss pursuant to Rules 9 and 12 of the Federal Rules of Civil Procedure (and conversion pursuant to Fed.R.Civ.P. 12(c) having been neither requested nor considered), no deposition testimony is before the Court. Even assuming the truth of Counsel's representation, however, Drooker's purchase of the bonds on November 1, 1989 (over one year before the filing of his suit) would make him chargeable with inquiry notice of the fraud he now alleges, based on the publicly disseminated information available as of that date.