**Andrew G. POMEROY, Plaintiff,**

v.

**SCHLEGEL CORPORATION, Defendant.**

**No. CIV–91–6094T.**

United States District Court, W.D. New York.

Dec. 19, 1991.

Scott A. Forsyth, Kaufman & Forsyth, Rochester, N.Y., for plaintiff.

Harry P. Truehart, III, Robert B. Calihan, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., for defendant.

## DECISION AND ORDER

TELESCA, Chief Judge.

### INTRODUCTION

Plaintiff Andrew Pomeroy filed this action on March 8, 1991, alleging that the defendant, Schlegel Corporation ("Schlegel") engaged in securities fraud in violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), (the "1934 Act") and in addition, alleging pendant state law claims of common law fraud and breach of contract. Defendant Schlegel now moves for summary judgment on the grounds that the plaintiff's securities fraud claim is barred by the applicable statute of limitations. For the reasons discussed below, the defendant's motion for summary judgment is granted.

## BACKGROUND

The following facts are undisputed. Andrew Pomeroy was an employee of Schlegel from 1981 until 1989. (Defendant's Local Rule 25 Stmt., ¶ 1; Plaintiff's Local Rule 25 Stmt., ¶ 1). In 1985, he purchased 700 shares of Schlegel stock under Schlegel's Executive Stock Plan for $21.70 per share. (Complaint, ¶ 8). On May 11 and 12, 1988, plaintiff sold his 700 shares back to Schlegel at $93.60 per share. (Complaint, ¶ 16). Approximately a month and a half later, Schlegel's Board of Directors issued a press release announcing that it was planning to explore "a variety of strategic alternatives, including merger." (Affidavit of R. Calihan, sworn to on July 30, 1991, Exhibit C) (hereinafter "Calihan Aff."). A copy of that press release and a letter explaining the decision was mailed to all Schlegel employees, including the plaintiff. (Affidavit of A. Pomeroy, sworn to on August 27, 1991, ¶ 5) (hereinafter "Pomeroy Aff."). Plaintiff admits that he was aware of the Board's decision to consider sale or merger shortly after it was made. (Calihan Aff., Exhibit A at 55). After the announcement, the value of Schlegel common stock rose to $140 per share. (Calihan Aff., Exhibit A at 55; Complaint, ¶ 19).

Plaintiff disputes the defendants' characterization of this increase "because it implies that Schlegel stock was publicly traded," when, in fact, "defendant set the price on its stock." (Plaintiff's Local Rule 25 Stmt., ¶ 3). Plaintiff does not, however, challenge defendants' assertion that shortly after the Board's announcement that it would consider a merger or sale of the company, any shareholder wishing to sell back his stock would have received $140 per share, nor does he dispute that he became aware of this increase in value shortly after it occurred. (Calihan Aff., Exhibit A at 55).

On December 22, 1991, Schlegel publicly announced that it had entered into a merger agreement with BTR Dunlop, Inc. (Pomeroy Aff., ¶ 3–6). Pursuant to that agreement, BTR Dunlop purchased Schlegel stock at $165.40 per share. Plaintiff was aware of this announcement. (Pomeroy Aff., ¶ 6).

On January 12, 1990, two other former Schlegel employees filed an action in federal court alleging that they had sold shares of stock back to Schlegel shortly before Schlegel announced that it had decided to explore the possibility of a merger. (Calihan Aff., Exhibit B). The plaintiffs in *Hickman v. Schlegel Corp.* alleged, among other claims, that the defendant had committed securities fraud by failing to disclose that the company might be sold before it bought back the shares of stock from plaintiffs. (Calihan Aff., Exhibit B).

In his deposition, Pomeroy stated that he read about the *Hickman* complaint in the newspaper in January of 1990, and at that time became aware that the *Hickman* case alleged securities fraud and other wrongdoing on the part of Schlegel. (Calihan Aff., Exhibit A at 57–59). Mr. Pomeroy further testified in his deposition that although he did not contact an attorney about pursuing a claim at that time, he did see "that there was a possibility that there should have been more disclosure prior to that point in time." (Calihan Aff., Exhibit A at 58). This was the first time that Mr. Pomeroy thought about the possibility that information may have been withheld from him in connection with the sale of his stock. (Calihan Aff., Exhibit A at 55–59).

In a subsequent affidavit, filed in opposition to defendant's motion for summary judgment, Mr. Pomeroy states that the first time he learned of the *Hickman* action was in February 1990, when his attorney, Scott Forsyth, sent him a newspaper article about the action. (Pomeroy Aff., ¶ 8). He further states that later in May of 1990, his attorney sent him copies of portions of memoranda filed in the *Hickman* action, which described the factual and legal bases of the action. Finally, he states that: "I made no decision on retaining Scott Forsyth, Esq. formally because the defendants had made a motion to dismiss the [*Hickman*] litigation for failure to state a claim which, if granted, could have weakened any possible claim by me. When the court denied the defendants' motion, I

then retained Scott A. Forsyth, Esq. and contacted the defendant in a futile effort to learn how much was known about the various 'alternatives' and when." (*Id.*). Mr. Pomeroy filed his law suit on March 8, 1991.

## DISCUSSION

### A. *The Applicable Statute of Limitations:*

■ Defendant Schlegel moves for summary judgment on the grounds that plaintiff's federal securities fraud action is barred by the statute of limitations. In a decision issued June 20, 1991, the United States Supreme Court ruled that the appropriate statute of limitations in a securities fraud action alleging violation of section 10(b) of the 1934 Act, is three years from the date the fraud was perpetrated or one year from the date the plaintiff discovers the "facts constituting the violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. —, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). In a companion decision issued the same day, the Court held that "once retroactive application is chosen for any assertedly new rule, it is chosen for all others ...," not just for the litigants presently before the court. *James B. Beam Distilling Co. v. Georgia,* — U.S. —, 111 S.Ct. 2439, 2447–48, 115 L.Ed.2d 481 (1991). Because the *Lampf* Court applied the new statute of limitations to the litigants before it, that limitations period also must be applied retroactively to all other plaintiffs alleging a securities fraud claim, whether or not that claim was already pending on the date of the *Lampf* decision. *See Jim Beam,* 111 S.Ct. at 2448; *Lampf,* 111 S.Ct. at 2782. Accordingly, in order to maintain an action, plaintiff must have filed his complaint within one year of discovering the fraud, and in any event, no more than three years from the date the fraudulent conduct occurred. *Lampf,* 111 S.Ct. at 2782.

I note that in early December 1991, both the House of Representatives and the United States Senate voted to approve an amendment to the 1934 Act, which would provide that

the limitation period for any private civil action implied under section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

(Special Provision Relating to Statute of Limitations on Private Causes of Action, 1991 S. 543, December 6, 1991). This bill has not yet become law, but even if it does, the plaintiff's claims in this case would not be subject to a more favorable limitations period.

The proposed amendment provides that the courts shall apply the law of the jurisdiction as it existed on June 19, 1991, to all cases commenced prior to that date. The Second Circuit adopted a one year/three year statute of limitations period for securities fraud actions on November 8, 1990. *Ceres Partners v. Gel Associates,* 918 F.2d 349, 364 (2d Cir.1990). In a subsequent decision, the Second Circuit ruled that the one year/three year rule would not apply retroactively. *Welch v. Cadre Capital,* 923 F.2d 989, 994 (2d Cir.), *judgment vacated,* — U.S. —, 111 S.Ct. 2882, 115 L.Ed.2d 1048 (1991). Thus, the law of this jurisdiction prior to the Supreme Court's *Jim Beam* decision was that a two year/six year statute of limitations applied to all cases which had been commenced prior to November 8, 1990, and a one year/three year statute of limitations applied to all cases commenced after November 8, 1990. *Welch,* 923 F.2d at 995. Because plaintiff did not file his complaint until March 8, 1991, his claims are governed by a one year/three year limitations period, either under Second Circuit law prior to June 20, 1991 or under the Supreme Court's *Lampf* and *Jim Beam* decisions.

### B. *Defendant's Motion for Summary Judgment:*

■ Defendant asserts that the statute of limitations has run on plaintiff's federal securities fraud claim. Specifically, defendant argues that the plaintiff was on "inquiry notice" of the alleged fraud in Janu-

ary or February of 1990, and accordingly, the statute of limitations began to run on the securities fraud claim more than one year before he filed his complaint. Plaintiff, on the other hand, maintains that there is a question of material fact with respect to when he had notice sufficient to start the statute of limitations running. Thus, the question central to defendant's motion is whether the undisputed facts are sufficient, as a matter of law, to put the plaintiff on inquiry notice of defendant's alleged fraudulent conduct.

Where a plaintiff alleges that the defendants have fraudulently concealed their unlawful conduct, the statute of limitations is tolled until the plaintiff discovers the fraud. The statute of limitations does not, however, "await [a plaintiff's] leisurely discovery of the full details of the alleged scheme." *Klein v. Bower*, 421 F.2d 338, 343 (2d Cir.1970). Instead, once the plaintiff has information sufficient

> to suggest to a person of ordinary intelligence the probability that he has been defrauded, a duty of inquiry arises, and if he omits that inquiry when it would have developed the truth, and shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed to him.

*Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir.1983).

In other words, once "storm warnings" exist, sufficient to alert a reasonable person to the probability that a fraud has been perpetrated, he must diligently conduct an investigation to determine the truth. *See Kennedy v. Josephthal & Co.*, 814 F.2d 798, 799 (1st Cir.1987). If the plaintiff fails to exercise due diligence, he will be charged with having knowledge of the alleged fraud and the statute of limitations will run "from the time at which the plaintiff *should have discovered* the general fraudulent scheme." *Berry Petroleum Company v. Adams & Peck*, 518 F.2d 402, 411 (2d Cir.1975) (emphasis added).

Here, contrary to the plaintiff's assertions, the essential facts are not in dispute. The plaintiff sold his stock back to Schlegel on May 11 and 12, 1988. Approximately

forty-five days later Schlegel's Board of Directors announced that it planned to explore the possibility of a sale or merger of the corporation. Pomeroy knew of this announcement and knew that the buy-back value of Schlegel common stock had increased to $140 per share shortly thereafter. He also was aware of Schlegel's announcement, in December of 1989, that the company would be purchased by BTR Dunlop Corp. Most importantly, in January or February of 1990, he read at least one newspaper account about a lawsuit that had been filed in federal court, and at that time "saw that there was a possibility that there should have been more disclosure...." (Calihan Aff., Exhibit A at 58).

Defendant argues that this combination of events, specifically the proximity of Schlegel's repurchase agreement with Pomeroy to the announcement that a merger was being considered, taken together with Mr. Pomeroy's knowledge in January or February of 1990 of the existence of the *Hickman* action, constituted sufficient inquiry notice to start the one-year period running. I agree. As a matter of law, I conclude that, taking into consideration the extent of his knowledge of preceding events, Mr. Pomeroy had inquiry notice of Schlegel's alleged fraudulent conduct when he read about the *Hickman* lawsuit. *See Berry*, 518 F.2d at 410–11; *Korwek v. Hunt*, 646 F.Supp. 953, 958–59 (S.D.N.Y. 1986), *aff'd*, 827 F.2d 874 (2d Cir.1987).

Plaintiff attempts to distinguish *Berry* and *Korwek* because they were both high-profile cases with extensive press coverage. Neither case is, however, distinguishable on that ground. In both of those cases, the court held that the extensive press coverage combined with the other information of which plaintiff was aware, was sufficient to establish "inquiry notice" *even though there was no evidence that the plaintiff had read the press coverage. See Korwek*, 646 F.Supp. at 958 (court took judicial notice that "regular newspaper readers knew what this case was about."); *Berry*, 518 F.2d at 410. Here, Mr. Pomeroy *actually read* an article about the *Hickman* case and admits that, at the time he

read the article, the possibility that Schlegel should have disclosed more information occurred to him.

Plaintiff does not argue that he exercised due diligence in attempting to uncover the fraud once he learned of the *Hickman* suit, nor could he. The *Hickman* complaint was filed in federal court and available for public review at the time he learned of the action. Despite this, he made no effort to obtain the complaint until May of 1990, three to four months after he first realized that there was a possibility that Schlegel withheld information from him.

The *Hickman* complaint alleges in part that, as early as March of 1987, a sale of Schlegel was contemplated. Further, the complaint alleges that as of May 1, 1988, "it was the intention of defendants Lennox and Schlegel to offer the corporation for sale at the highest possible value consistent with the Prudential–Bache report, even if no formal vote of the Board of Directors authorizing such sale had yet been taken, and even if no formal decision to solicit bids or tender offers had been made." (*Hickman* Complaint, ¶ 54). Had he reviewed the *Hickman* complaint, plaintiff would have discovered the general fraudulent scheme which he now alleges in his complaint. *See Berry*, 518 F.2d at 410.

Moreover, plaintiff admits that he "made no decision on retaining Scott A. Forsyth, Esq. formally because the defendants [in *Hickman*] had made a motion to dismiss ... for failure to state a claim, which, if granted, could have weakened any possible claim by [him]." (Pomeroy Aff., ¶ 8). Once defendants' motion to dismiss the *Hickman* complaint was denied, Pomeroy went forward with his action. As defendant points out, this is "the sort of sitting on one's rights that the statute of limitations is intended to discourage." (Defendant's Reply Memo, at page 4). Certainly, the plaintiff's "wait and see" strategy is not sufficient justification either to prevent the statute of limitations from running in the first place or to act as a toll. Because "the fraud on which [plaintiff's action is] based was known or *should have been known*" to the plaintiff more than one year prior to the commencement of this action, his securities fraud claim is barred by the statute of limitations. *See Berry*, 518 F.2d at 410–11.

## CONCLUSION

There is no genuine dispute as to any fact material to the statute of limitations issue. Plaintiff had sufficient information as of January 1990, to create a duty of inquiry and start the one-year statute of limitations running. Because plaintiff should have known of the alleged fraud more than one year before he brought this action, his securities fraud claim is barred by the statute of limitations. Plaintiff's remaining claims are state law claims brought pursuant to this court's supplemental jurisdiction. This court has dismissed all of the claims over which it has original jurisdiction and, in accordance with 28 U.S.C. § 1367(c)(3), declines to exercise its supplemental jurisdiction over plaintiff's remaining claims. Accordingly, plaintiff's complaint is dismissed in its entirety.

ALL OF THE ABOVE IS SO ORDERED.