34 F.3d 1066
 RICO Bus.Disp.Guide 8624
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
John W. BAUSCH, Sr.; Armour S. Armstrong; Ebrahim
Ashayeri; Jacob Block; Edward R. Brown; Jessie W. Bynum;
Mel Castillo; William Cour; Ralph James Dean; John
Debelius, Jr., Personal Representative of the Estate of John
Debelius, Sr.; Orlando Ezzo; James E. Fargo; Gerald F.
Fuller; Jay L. Gerst; John P. Glennon; Carl J. Grip;
Robert Hines; Linda Hodge; Wayne Holman; Dieter E.
Heinrich; Samuel Horn; Elizabeth M. Jameson; Myriam L.
Johnston; Ralph E. Jones, Jr.; Frederick J. Kelley; Helen
Yen Koo; Robert D. Koontz; Deloros H. Kucha; Richard
Larkin; Melvin F. Markey; Charles McGowan; William O.
Miller; Louis J. Moczar; Thomas A. Morgan; Myles
O'Reilly; Howard Perry; Ronald Rasmussen; Robert A.
Riddell; John A. Rittue; Barry Rothman; Stephen R.
Sandberg; Kenneth A. Scott, Sr.; Rajinder S. Sidhu;
Lawrence F. Signora; Henry B. Sweitzer; Thomas A.
Thrasher; William J. Vareschi; Nicholas Von Guggenberg;
Edward Wallace; James S. Walsh; Gary L. Jordan; Charles
D. Youree; Matthew M. Kline, Plaintiffs-Appellants,
v.
PHILATELIC LEASING, LIMITED, a New York Corporation;
Hambrose Stamps, Limited, a New York Corporation; M & J
Holding Corp., a New York Corporation; Melvin Hersch;
Herman Finesod; Trager Glass & Company, P.C., a New York
Professional Corporation; E. Joseph Mcconnell,
Incorporated, a New York Corporation; Hugh Goldberg;
Subway Stamp Shop, Incorporated; International Collectors
Guild, Limited, a New Jersey Corporation, Defendants-Appellees,
and
GLOBAL INTERNATIONAL, a Liberian Corporation; Friedman &
Shaftan, P.C., a New York Professional Corporation; Pilgrim
Stamp & Coin, Incorporated, a Massachusetts Corporation;
D.W. Brubaker, d/b/a Postage Stamps Products; Donald
Palazzo; Dell Philatelic Consultants, Limited, a
Massachusetts Corporation; Westminster Stamp Gallery,
Limited, a New York Corporation, Defendants.
 No. 93-1685.
 United States Court of Appeals, Fourth Circuit.
 Argued May 9, 1994.
Decided August 19, 1994.
 
 1
 Appeal from the United States District Court for the District of Maryland, at Baltimore. J. Frederick Motz, Paul V. Niemeyer, William M. Nickerson, District Judges. (CA-88-242-WN)
 
 
 2
 Argued: James Linwood Quarles, III, Hale & Dorr, Washington, D.C., for Appellants.
 
 
 3
 Argued: Jayson Leslie Spiegel, Jordan, Coyne & Savits, Washington, D.C. On brief: Geoffrey T. Hervey, Jordan, Coyne & Savits, Washington, D.C., for appellee Trager Glass.
 
 
 4
 D.Md.
 
 
 5
 AFFIRMED.
 
 
 6
 Before WILLIAMS, Circuit Judge, PHILLIPS, Senior Circuit Judge, and ERWIN, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 
 OPINION
 PER CURIAM
 
 7
 Appellants seek review of the district court's dismissal, pursuant to Fed.R.Civ.P. 12(b)(6), of their claims for violations of the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.A. Secs. 1961-1968 (West 1984 & Supp.1994), and state law claims of misrepresentation and negligent misrepresentation. Appellants contend that, contrary to the district court's conclusion, their claims were timely presented under the applicable statutes of limitation. Our review of the record leads us to the same conclusion reached by the lower court: that Appellants' failure to exercise due diligence in pursuing their claims in a timely fashion, after being on inquiry notice of their actionable injuries, renders their claims time-barred. Hence, we affirm the district court's dismissal.
 
 I.
 
 8
 This rather convoluted case has its origin in a fraudulent tax shelter scheme involving the sale of leasehold interests in stamp masters[1] of "Hebrides stamps" for four small privately-owned islands off the coast of Scotland. Only the relevant latter stages of this scheme are described herein. For an excellent account of the background history of the stamp master program involved in this case, dating back to 1979, we defer to the opinion by Judge Whitman Knapp of the United States District Court for the Southern District of New York, wherein he found these tax shelters to be abusive. United States v. Philatelic Leasing Ltd., 601 F.Supp. 1554 (S.D.N.Y.1985), aff'd, 794 F.d 781 (2d Cir.1986); see also Newmyer v. Philatelic Leasing Ltd., 888 F.2d 385 (6th Cir.1989), cert. denied, 495 U.S. 930 (1990).
 
 
 9
 After artificially inflating the value of the stamp masters from $3.60 each to prices ranging from $150,000 to $400,000 each, Philatelic Leasing Ltd. (Philatelic), Global International Ltd. (Global), and Hambrose Stamps Ltd. (Hambrose), along with Melvin Hersch and Herman Finesod, prepared a confidential offering memorandum. The seventy-page memorandum described the stamp master program, its profit potential and tax benefits,[2] and warned that, while an Internal Revenue Service (IRS) challenge was likely, the stamp master program would successfully survive any such challenge.
 
 
 10
 In the fall of 1982, Philatelic began marketing these investment schemes nationwide. Maryland salesman Robert Ness, representing himself as a tax shelter specialist, marketed the stamp master program through Washington Post advertisements, distribution of the offering memorandum prepared by Philatelic and others, and evening seminars conducted by Ness and purported lawyers, accountants, and investment or tax shelter specialists. Ness offered stamp master "packages," which included his services as a business advisor, tax consultant, and liaison between investors and potential distributors for stamps produced from the stamp masters. Appellants in the instant case are fifty-three individual investors from Maryland, Virginia, and the District of Columbia who purchased stamp master leasehold interests from Ness.
 
 
 11
 On June 13, 1983, the IRS challenged the stamp master program before Judge Knapp in the Southern District of New York by suing Philatelic, Hersch, Hambrose, and Global for violations of 26 U.S.C.A. Secs. 6700, 7408 (West 1989 & Supp.1994).[3] Appellants were informed of this action almost immediately after its filing. Some Appellants approached Ness with concerns about the pending challenge. Ness responded by advising all Appellants, including those who did not contact him, that the pending litigation was a routine matter of no consequence to them, that they should rely on Defendants' counsel to represent their interests in that litigation rather than retaining independent counsel, and that the stamp master program would ultimately succeed as a legitimate tax shelter. Ness repeated those assurances after Appellants' 1983 tax returns which reflected their investments in the stamp program were challenged in a series of IRS deficiency and penalty notices issued to individual Appellants in 1984 and 1985. Appellants were apparently satisfied with Ness' reassurances, because no Appellant is alleged to have made any further inquiry into the viability of the stamp master program.
 
 
 12
 On February 13, 1985, Judge Knapp issued his opinion in the IRS challenge, finding that the stamp master program was an abusive tax shelter and enjoining further marketing of the program. Philatelic Leasing, 601 F.Supp. at 1567. However, Ness continued to reassure Appellants that the program's validity would ultimately be confirmed and that the deductions claimed in their 1983 returns would ultimately be allowed. Apparently disbelieving his own advice, Ness fled the country for Australia in April 1987.
 
 
 13
 Appellants sustained substantial financial losses in lease payments, printing and distribution payments, tax penalties, interest on back taxes, and other costs as a result of the failed tax shelter. They filed this action against Philatelic, Global, Hambrose, Hersch, Finesod, and other participants in the stamp master program in the United States District Court for the District of Maryland on January 28, 1988, alleging federal claims for securities fraud and RICO violations, and state law claims for misrepresentation, negligent misrepresentation, malpractice, and breach of contract. The securities fraud claims were dismissed by United States District Judge J. Frederick Motz.[4] He also denied Defendants' Fed.R.Civ.P. 12(b)(6) motions to dismiss the state claims on statute of limitations grounds, and instructed Appellants to file an amended complaint. Among other things, Appellants were instructed to add further allegations supporting their RICO claims against all Defendants and to allege with greater specificity their claims against, and the district court's jurisdiction over, Trager Glass and Company (Trager), a New York accounting firm whose only apparent connection with the stamp master program was its letter to Philatelic offering to assist investors in any IRS challenge, which was included in the offering memorandum.
 
 
 14
 Two amended complaints later, with the only significant amendments being the addition of another plaintiff and the elimination of Robert Ness as a defendant, Defendants again sought dismissal of all claims under the applicable statutes of limitation. Judge Niemeyer found that Appellants' causes of action accrued in June 1983, when the IRS challenge first notified Appellants of the fraudulent misrepresentations and the potential illegality of the stamp master program. He rejected Appellants' attempted invocation of the equitable tolling doctrine of fraudulent concealment, finding that Appellants had failed to exercise due diligence in discovering the fraudulent scheme. The RICO, misrepresentation, and negligent misrepresentation claims were therefore dismissed as time-barred under the applicable statutes of limitation.
 
 
 15
 Subsequent negotiated settlements and default judgments led to the entry of final judgment. This appeal concerns Judge Niemeyer's dismissal of the RICO, misrepresentation, and negligent misrepresentation claims as time-barred.[5] Of the eighteen defendants, only Trager filed an appellate brief and participated in oral argument.
 
 II.
 
 16
 Dismissal under Rule 12(b)(6) is appropriate where "it appears beyond doubt that the plaintiff[s] can prove no set of facts to support [their] allegations." Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989). Hence, we review de novo whether the allegations contained in the original complaint and the two amended complaints demonstrate Appellants' failure to prosecute their RICO and state law claims in a timely fashion. United States v. United Medical & Surgical Supply Corp., 989 F.2d 1390, 1398 (4th Cir.1993).
 
 A.
 
 17
 We begin by looking at the statutes of limitation and accrual dates applicable to Appellants' claims. Appellants' RICO claims are governed by a four-year statute of limitations, commencing when they knew or should have known of the injury giving rise to that cause of action. Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211, 220 (4th Cir.1987). The limitations period for Appellants' state law claims of misrepresentation and negligent misrepresentation is three years. Md. Cts. & Jud. Proc.Code Ann. Sec. 5-101 (Supp.1993). Under Maryland's "discovery" rule, those state law claims accrued when Appellants had
 
 
 18
 actual knowledge--that is express cognition, or awareness implied from "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry[thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued."
 
 
 19
 Poffenberger v. Risser, 431 A.2d 677, 681 (Md.1981) (quoting Baynard v. Norris, 5 Gill. 468, 483).
 
 
 20
 "Commencement of a limitations period need not ... await the dawn of complete awareness." Brumbaugh v. Princeton Partners, 985 F.2d 157, 162 (4th Cir.1993). "A plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, and is charged with the knowledge of all facts such an investigation would have disclosed." Jensen v. Snellings, 841 F.2d 600, 607 (5th Cir.1988).
 
 
 21
 Inquiry notice is triggered by evidence of the possibility of fraud, not by complete exposure of the alleged scam. Merely bringing suit after the scheme has been laid bare through the efforts of others ... will not satisfy the requirements of due diligence when there have been prior warnings that something was amiss.
 
 
 22
 Brumbaugh, 985 F.2d at 162 (citations omitted) (emphasis added). Hence, a cause of action accrues when the injured party has received inquiry notice sufficient to prompt an objectively reasonable person to investigate further into the surrounding facts of the actionable injury. Although the accrual date of a cause of action is a factual inquiry typically reserved for a jury, the district court may resolve that inquiry itself if the facts presented provide a "clear basis" for such a determination. Brown v. American Broadcasting Co., 704 F.2d 1296, 1304 (4th Cir.1983).
 
 
 23
 In some circumstances, once a cause of action has accrued, the limitations period may be tolled by the equitable concept of fraudulent concealment, which requires proof that "(1) the party pleading the statute fraudulently concealed facts which are the basis of a claim, and that (2) the claimant failed to discover those facts within the statutory period, despite (3) the exercise of due diligence." Pocahontas, 828 F.2d at 218. Maryland has a similarly formulated fraudulent concealment doctrine. Md. Cts. & Jud. Proc.Code Ann. Sec. 5-203 (1989 Repl.Vol.). Thus, due diligence is an inquiry of critical importance in this case as to both the accrual of Appellants' causes of action and the validity of their claim of fraudulent concealment.
 
 B.
 
 24
 Although they challenge the district court's conclusion that their claims are time-barred, Appellants have not specifically identified a date upon which they contend their causes of action accrued. Instead, they point to the conclusion by Judge Knapp that Philatelic, Hersch, Hambrose, and Global engaged in a "conspiracy to conceal the truth ... continuing to the present day," i.e., February 13, 1985, the filing date of Judge Knapp's decision. Philatelic Leasing, 601 F.Supp. at 1556. Although they concede full contemporaneous knowledge of the IRS challenge and subsequent receipt of the IRS deficiency and penalty notices, Appellants argue that they conducted a reasonable and diligent investigation of any potential actionable injury by contacting Ness about the IRS challenge. According to Appellants, Ness' repeated misrepresentations and reassurances, and their reasonable reliance thereon, alleviated any suspicions about the existence of an actionable injury and concealed the fraudulent nature of the stamp master program, thereby apparently forestalling accrual of their causes of action until Judge Knapp's 1985 resolution of the IRS challenge. Because the alleged fraudulent concealment lasted until February of 1985 and because their original complaint was filed within three years of that date, Appellants contend that their claims were timely presented.
 
 
 25
 This argument represents a basic misunderstanding of the fraudulent concealment doctrine. Fraudulent concealment does not, in itself, establish an accrual date for a cause of action. See Jensen, 841 F.2d at 607. We must identify the accrual date for Appellants' causes of action before considering the tolling effect, if any, of Defendants' alleged fraudulent concealment.
 
 
 26
 We find that Appellants' RICO, misrepresentation, and negligent misrepresentation claims accrued as of June 1983, the filing date of the IRS challenge in the Southern District of New York. That challenge focused exclusively on the purported fraudulent nature of the stamp master program and the resulting tax shelter. As of June 1983, each Appellant had invested substantial amounts of capital in a program whose sole perceived benefit as a significant, legitimate tax deduction was squarely challenged by the federal government in litigation pending in another state. Although Ness forewarned Appellants of a possible IRS challenge, that possibility became a reality in June 1983, as did the potential for losing both their initial capital investments and the ensuing tax benefits. We find no error in the district court's finding that an objectively reasonable person, faced with the knowledge of the IRS challenge, would have become sufficiently suspicious of the possibility of fraud to pursue further investigation of the legitimacy of the stamp master program.[6] Appellants point to their direct contact with Ness as a reasonable and diligent investigation. We disagree. A limited inquiry directed to the agent of the parties responsible for creating the fraudulent stamp master program, partners in a "conspiracy to conceal the truth," hardly approaches the level of reasonableness or diligence necessary to dispel the spectre of the program's questionable legitimacy. In fact, we also agree with the district court that Ness' reassurances of ultimate success and advice against seeking assistance from independent counsel, standing alone, would exacerbate rather than assuage the suspicions of a reasonable person as to the existence of an actionable injury, and prompt further inquiry to some independent lawyer, accountant, or investment or tax shelter specialist. In this regard, we echo the district court's conclusion that "[w]hen the person acting on behalf of those under suspicion denies any problem, that denial does not operate to conceal the notice provided to the plaintiffs by the government's charges." (J.A. at 292.) Appellants' failure to file suit until almost three years after Judge Knapp's decision confirmed "the possibility of fraud ... laid bare through the efforts of" the IRS was neither reasonable nor diligent in light of the "prior warnings that something was amiss" in June 1983. Brumbaugh, 985 F.2d at 162.
 
 
 27
 The inadequacy of Appellants' investigation is underscored by subsequent events. Appellants claimed the tax deductions they received from the stamp master program on their 1983 tax returns even though they knew of the IRS challenge. Noticeably absent from the complaints is any allegation that Appellants consulted Ness as to the status of the IRS challenge before filing their tax returns. Although Appellants clearly were on notice of the IRS challenge (which would have been ten-months old by the April 15, 1984, deadline for the submission of their 1983 returns), nowhere in the complaints is it alleged that any Appellant corroborated with Ness, or with any other person, the propriety of a deduction related to the stamp master program. Hence, Appellants placed themselves at risk for further financial losses, in the form of assessed tax deficiencies, penalties, and interest, by declaring those deductions in their 1983 return without a reasonable investigation into the status of the IRS challenge. See Wood v. Carpenter, 101 U.S. 135, 143 (1879) ("The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence.").
 
 
 28
 Moreover, once those deductions were disallowed and penalties and interest assessed, Appellants turned once again to Ness for reassurance. There is no allegation with regard to any of the fifty-three Appellants that anyone other than Ness was consulted during the pendency of the IRS challenge. A few simple questions directed to the IRS or to any knowledgeable, independent person could have easily revealed the questionable legitimacy of the stamp master program. One can hardly describe Appellants' actions after receiving inquiry notice in June 1983 as reasonable or diligent.
 
 
 29
 The facts in this case bear a striking resemblance to the situation in Pocahontas. In that case, Pocahontas, a contract mining company, asked National Mines Corporation why it refused to accept certain coal deliveries from Pocahontas and why the price paid for the coal that was accepted was so low. Rather than admitting that the price and delivery policies resulted from illegal antitrust activity, National Mines concocted a story that a railroad strike necessitated the delivery quotas and that the price was the maximum allowable. Faced with a statute of limitations challenge, Pocahontas attempted to invoke the fraudulent concealment doctrine, arguing that its direct inquiry to National Mines constituted the due diligence required for that equitable toll. Pocahontas, 828 F.2d at 218. Although rendered in the context of a determination of fraudulent concealment, rather than the accrual date of a cause of action, we find that court's rationale in rejecting Pocahontas' due diligence argument equally controlling as to the due diligence required of a claimant who has inquiry notice of an actionable injury:
 
 
 30
 [t]o permit a claim of fraudulent concealment to rest on no more than an alleged failure to own up to illegal conduct upon this sort of timid inquiry would effectively nullify the statute of limitations in these cases. It can hardly be imagined that illegal activities would ever be so gratuitously revealed. "Fraudulent concealment" implies conduct more affirmatively directed at deflecting litigation than that alleged here; and "due diligence" contemplates more than the unpursued inquiry allegedly made by Pocahontas.
 
 
 31
 Id. at 218-19. Appellants cannot argue that they exercised the due diligence required of a reasonable person on inquiry notice of an actionable wrong by relying on the misrepresentations of an agent of the perpetrators of the fraud upon which their claims are based and by failing to seek any independent advice. As of June 1983, Appellants were on inquiry notice of their RICO, misrepresentation, and negligent misrepresentation claims, and they must be charged with knowledge of the facts that a reasonable investigation would have revealed, namely that the stamp master program was a fraudulent investment scheme and that the resulting tax shelter was abusive.
 
 C.
 
 32
 The equitable doctrine of fraudulent concealment is unavailable in this case as a means to toll the limitations periods that commenced in June 1983. First, Appellants' failure to exercise due diligence after receiving inquiry notice of the actionable wrongs also precludes them from demonstrating the due diligence required for fraudulent concealment. Davis v. Grusemeyer, 996 F.2d 617, 625 (3d Cir.1993). Ignorance in the face of facts discoverable upon simple inquiry does not suffice for purposes of the fraudulent concealment doctrine. Pocahontas, 828 F.2d at 218; see also Volk v. D.A. Davidson & Co., 816 F.2d 1406, 1416 (9th Cir.1987) ("[M]ere ignorance of the cause of action does not, in itself, toll the statute.").
 
 
 33
 Moreover, the only fraudulent activity pled by Appellants that could be attributed to Defendants after the accrual of Appellants' claims, was Ness' reassurances and predictions of ultimate success in the IRS challenge. This does not rise to the level of fraudulent concealment contemplated by that equitable doctrine. See Wood, 101 U.S. at 143 ("Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry."). Under the heightened pleading requirements of Fed.R.Civ.P. 9(b), Appellants must state all averments of fraud, including those pertaining to fraudulent concealment, with particularity. Pocahontas, 828 F.2d at 219. Appellants' "[g]eneral allegations of concealment inserted in plaintiffs' complaint ... are simply not enough to ... toll a statute of limitations...." Topalian v. Ehrman, 954 F.2d 1125, 1133 (5th Cir.), cert. denied, 113 S.Ct. 82 (1992); see also Volk, 816 F.2d at 1416 (general partner who failed to disclose certain geological reports to coal mine investors did not engage in fraudulent concealment because no affirmative steps to mislead were taken); Associated Realty Co. v. Kimmelman, 311 A.2d 464, 465-67 (Md. Ct. Spec.App.1973) (attorney's assurances to clients that adverse verdict would be reversed on appeal not fraudulent concealment because clients were not kept ignorant of their claims by the fraud); Leonhart v. Atkinson, 289 A.2d 1, 6 (Md.1972) (same, where accountant assured plaintiff of ultimate success in IRS claim), overruled on other grounds by Poffenberger v. Risser, 431 A.2d 677, 679-80 (Md.1981). Appellants' failure to plead due diligence or fraudulent concealment with particularity and to demonstrate these two prerequisites defeats their attempt to invoke the fraudulent concealment doctrine in this case.[7]
 
 
 34
 Appellants' claims accrued in June 1983. The applicable limitations period for their RICO claim expired in June of 1987, and their state law claims of misrepresentation and negligent misrepresentation were rendered time-barred as of June 1986. The January 28, 1988, filing date of Appellants' original complaint was well beyond both of these deadlines. Despite the harshness of this result, we are compelled by the facts of this case to affirm the district court's dismissal of that complaint and the subsequent amended complaints.
 
 III.
 
 35
 For the reasons stated herein, we find that Appellants' RICO, misrepresentation, and negligent misrepresentation claims were indeed time-barred. We affirm the district court's Rule 12(b)(6) dismissal of those claims.
 
 AFFIRMED
 
 
 [1]
 Stamp masters are the lithographic plates used to print postage stamps
 
 
 [2]
 The tax shelter purportedly created by the stamp master program is derived from the investment tax credit held by the owner of the stamp masters as a result of his expenditures in acquiring the stamp masters. The owner of the stamp masters then leases those assets to investors who, as consideration for their lease payments, receive the owner's tax credits, in proportions equal to their lease payments, for use in reducing their own tax liabilities. Philatelic Leasing, 601 F.Supp. at 1554
 
 
 [3]
 Section 6700 prohibits false statements relating to "the allowability of any deduction or credit, the excludability of any income, or the securing of any other tax benefit" and "gross valuation overstatement[s]" of material matters in connection with the organization of or the sale of an interest in an investment plan or arrangement. Under Sec. 7408, the IRS is authorized to commence a civil action in the name of the United States seeking an injunction against activity prohibited by Sec. 6700
 
 
 [4]
 Although this case was assigned to then United States District Judge Paul V. Niemeyer, Defendants' motions to dismiss were assigned to Judge Motz due to a temporary caseload imbalance
 
 
 [5]
 Appellants' notice of appeal also references the November 22, 1988, dismissal of their securities fraud claim by Judge Motz. However, there has been no discussion or argument regarding that dismissal in Appellants' briefs or at oral argument. Appellants' failure to proffer contentions of alleged error and supporting arguments and authorities, as required by Fed. R.App. P. 28(a)(5), constitutes abandonment of any claims of reversible error arising therefrom. Bender v. Brumley, 1 F.3d 271, 275 (5th Cir.1993); 16 Charles A. Wright et al., Federal Practice and Procedure, Sec. 3974, at 421 (1977 & Supp.1993, at 690). Also, given our conclusion that Appellants' claims were indeed time-barred, we need not consider Trager's alternative defense that the Maryland district court lacked personal jurisdiction over Trager
 
 
 [6]
 See, e.g., Hartnett v. Schering Corp., 2 F.3d 90, 93 (4th Cir.1993) (media coverage, existing litigation, and case law revealed existence of possible cause of action and required reasonably diligent investigation thereof); Berry Petroleum Co. v. Adams & Peck, 518 F.2d 402, 409-11 (2d Cir.1975) (filing of SEC action and private suits alleging fraud put plaintiff on notice of potential cause of action, requiring him to investigate his discoverable claim); Pomeroy v. Schlegel Corp., 780 F.Supp. 980, 983-84 (W.D.N.Y.1991) (newspaper account of lawsuit alleging fraudulent scheme actually read by plaintiff placed him on inquiry notice of underlying facts of his cause of action and precluded equitable tolling of limitations period)
 
 
 [7]
 Appellants' contention that their claims were timely presented after Judge Knapp's finding of a conspiracy to conceal the truth, Philatelic Leasing, 601 F.Supp. at 1556, was not alleged below as a basis for either tolling the applicable limitations periods or forestalling the accrual date of their causes of action. The absence of such an allegation violates the heightened pleading requirement of Rule 9(b), and Appellants' failure to raise that issue before the district court precludes appellate review under Singleton v. Wulff, 428 U.S. 106, 120 (1976). Notwithstanding these shortcomings by Appellants, we doubt the relevancy of a conspiracy involving Philatelic, Hersch, Hambrose, and Global where Appellants have admittedly dealt only with, and relied solely upon the representations of, Robert Ness
 Appellants also argue that the district court's determinations were erroneously rendered on a collective basis, rather than on an individualized examination of each Appellant's claims and the facts surrounding those claims. Any such shortcoming was the immediate result of Appellants' failure under Rule 9(b) to allege fraudulent concealment with particularity as to each Appellant. The district court properly considered the facts as they were alleged by Appellants.