# United States Court of Appeals
# for the Federal Circuit

_____

**HARTFORD FIRE INSURANCE COMPANY,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee.*

_____

2010-1198

_____

Appeal from the United States Court of International Trade in case no. 07-Cv-0067, *Chief Judge* Donald C. Pogue.

_____

Decided: August 11, 2011

_____

FREDERIC D. VAN ARNAM, JR. Barnes, Richardson & Colburn, of New York, New York, argued for plaintiff-appellant. With him on the brief was ERIC W. LANDER.

CLAUDIA BURKE, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director.

_____

Before RADER, *Chief Judge*, PLAGER and LOURIE, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* PLAGER. Dissenting opinion filed by *Circuit Judge* LOURIE.

PLAGER, *Circuit Judge*.

This is a suretyship case arising under the customs laws of the United States. The surety was barred from suing to challenge its liability under its surety contract on the grounds that, because it knew of its potential protest grounds in time to file its protest administratively within the time period provided in 19 U.S.C. § 1514(c)(3), it could not bring a lawsuit under the special provisions of 28 U.S.C. § 1581(i). Because we conclude that the United States Court of International Trade ("Court of International Trade") erred in determining that the surety's claim accrued prior to the end of the protest period, we reverse the dismissal of the complaint and remand the case for further proceedings consistent with this opinion.

## BACKGROUND

During one month in the summer of 2003, Sunline Business Solutions Corporation ("Sunline") imported eight entries of frozen cooked crawfish from the People's Republic of China. These entries are referred to as the "Hubei entries" by the parties and the Court of International Trade. United States Customs and Border Protection ("Customs") law requires that importers post securities for entries of imported merchandise. 19 C.F.R. § 142.4. Importers often use a surety bond as a method of posting the required security, whereby the surety guarantees to the United States that it will pay the importer's

entry obligation should the importer fail to make its required payment. Sunline procured its required eight single entry bonds, *see* 19 C.F.R. § 113.62, for the Hubei entries from Appellant Hartford Fire Insurance Company ("Hartford").

At the time of entry into the United States, the Hubei entries were subject to an existing antidumping order (A-570-848-036). However, following an administrative review of that order by the International Trade Administration, the Hubei entries were liquidated, as defined in 19 C.F.R. § 159.1, and a new, higher, antidumping duty rate was levied. *See* Freshwater Crawfish Tail Meat from the People's Republic of China; Notice of Final Results of Antidumping Duty Administrative Review, and Final Rescission of Review, in Part, 69 Fed. Reg. 61,636 (Dep't of Commerce Oct. 20, 2004) (notice of final results of admin. review). By June 22, 2005, Sunline had not made a payment for these additional antidumping duties, so Customs sought to obtain the payment from Sunline's surety, Hartford. *Hartford Fire Ins. Co. v. United States*, 679 F. Supp. 2d 1362, 1364 (Ct. Int'l Trade 2009).

Meanwhile, in May of 2005, Hartford's counsel learned from an individual connected with a Customs brokerage firm that personnel from Sunline had been arrested for using false invoices. *See United States v. Shen*, No. 03-CR01208 (C.D. Cal. Nov. 25, 2003). On June 3, 2005, Hartford undertook an investigation into the *Shen* matter by filing a Freedom of Information Act ("FOIA") request with Customs. Then, on October 7, 2005, Hartford requested a copy of the *Shen* criminal case file from the Central District of California. From investigating the *Shen* case file, Hartford believed it learned of potential grounds upon which it could deny liability

regarding Customs demand for payment. *Hartford*, 679 F. Supp. 2d at 1367.

Specifically, within the *Shen* case file there was a letter dated June 19, 2003, from Shanghai Taoen International Trading Company ("STI") to Customs alleging that illegal importations of crawfish tailmeat from China were occurring. This notification to Customs occurred more than a month before Hartford began issuing surety bonds to Sunline for the Hubei entries. Following the receipt of the STI letter, Customs began an investigation into the importation of crawfish tailmeat from China. Hartford alleges in its amended complaint that the failure of Customs to disclose its crawfish tailmeat investigation to Hartford prior to its issuance of the Sunline surety bonds constitutes a material misrepresentation by Customs, thus making the bonds voidable at Hartford's election.

Pursuant to 19 U.S.C. § 1514, Hartford had 90 days in which to file an administrative protest with Customs from the mailing date of the notice of demand for payment against its bonds—which it did not do. Instead, on February 7, 2007, Hartford filed suit under 28 U.S.C. § 1581(i) in the Court of International Trade, seeking to have its surety bonds with Sunline voidable at Hartford's option because of the information it discovered after investigating the *Shen* case file. *Id.* at 1365.

Subsection 1581(i) of title 28 grants exclusive jurisdiction to the Court of International Trade over:

[A]ny civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—

(1) revenue from imports or tonnage;

(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;

(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or

(4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.

In the Court of International Trade, Hartford argued that jurisdiction is proper under this subsection because it did not learn of the basis for its cause of action until after the protest period expired, thus it was not possible for it to bring an administrative protest under 19 U.S.C. § 1514(c)(3). The trial court disagreed with Hartford and held that, because Hartford "could and should have reasonably known of the existence of its present claims against Customs within the statutorily prescribed time period for filing a protest," and because Hartford's claims are within the scope of protestable claims under 19 U.S.C. § 1514(c)(3), a law suit pursuant to subsection 1581(i) is unavailable; in effect, the court lacks subject matter jurisdiction. *Hartford*, 679 F. Supp. 2d at 1368.

Hartford timely appealed the decision of the Court of International Trade. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

As with other questions of law, we review the Court of International Trade's jurisdictional rulings without deference. *JCM, Ltd. v. United States*, 210 F.3d 1357, 1359 (Fed. Cir. 2000).

The question is whether Hartford is entitled to bring a lawsuit under section 1581(i), challenging the Government's demand, for payment under the surety contract. In interpreting the very broad language of section 1581(i), we have limited its scope so that it "may not be invoked when jurisdiction under another subsection of section 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Int'l Custom Prods. v. United States*, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (quoting *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 359 (Fed. Cir. 1992)). The application of such a standard is simple enough for the majority of protests eligible to be filed administratively by a surety under 19 U.S.C. § 1514(c).

But in the "unusual situation where a claim does not accrue until after the protest period has expired," this court has observed that "[n]o administrative [protest] procedure exists." *St. Paul Fire & Marine Ins. Co. v. United States*, 959 F.2d 960, 964 (Fed. Cir. 1992). Furthermore, because "[a] surety must have some grounds for objecting to the government's demand," it cannot simply file a placeholder protest while it searches for a protestable basis. *Id.* at 963. Therefore, this court has recognized that if the grounds for the administrative protest were not known and could not have reasonably been known until after the protest period expires, section 1581(i) is an appropriate jurisdictional basis for bringing the suit. *Id.*

at 964 (citing *Chevron U.S.A., Inc. v. United States*, 923 F.2d 830, 834 (Fed. Cir. 1991)).

Here, the trial judge found that Hartford reasonably should have known about the protest grounds in May 2005 when it first heard about the *Shen* case. *Hartford*, 679 F. Supp. 2d at 1367. In our view, such a conclusion fails to fully appreciate the circuitous route involved before Hartford was able to discover its alleged causes of action. First, Hartford only indirectly learned of the *Shen* matter—its counsel heard about it from a third party. Second, the *Shen* case involved entirely different shipments of crawfish, which were not the subject of any surety bond issued by Hartford. Third, the *Shen* case was brought against two individuals who worked for Sunline and not against the company itself; in fact, Sunline was never named in the *Shen* case as a party. The circumstances leading up to Hartford's eventual discovery of the information it alleges to support its causes of action remind one of a detective story filled with happenstance, rather than what might be expected to surface as a result of routine uncovering of information through the exercise of due diligence.

The trial court noted that Hartford did not request a copy of the *Shen* criminal case file until a full four months later from the date its outside counsel first heard of the matter. *Hartford*, 679 F. Supp. 2d at 1367. Even if Hartford might have suspected something was going on with Sunline based on the criminal indictment of two of its employees that does not necessarily mean that Hartford would have reason to suspect that a potential protest ground for its unrelated bond demand would exist amongst the publicly available documents filed in the *Shen* case.

The trial court cites to the *Pomeroy* case as support for its finding that Hartford should have known of its protest grounds by the end of the protest period. *See Pomeroy v. Schlegel Corp.*, 780 F. Supp. 980 (W.D.N.Y 1991). But *Pomeroy* is quite distinguishable. *Pomeroy* involved a defendant who was monitoring a lawsuit filed by two of his former co-workers who were suing their employer for securities fraud. After reading about his co-workers' suit, Mr. Pomeroy eventually filed his own securities fraud suit some 15 months later. The applicable statute of limitations required that the suit be brought within one year from when Mr. Pomeroy discovered the facts constituting the violation. The court held that Mr. Pomeroy's claim was barred by the statute of limitations because he should have known about the company's alleged fraudulent conduct when he read about the other lawsuit. *Id.* at 983. The facts between Mr. Pomeroy's fraud claim and the litigation involving his co-workers were the same—they all sold their stock shares back to the company just before a big merger announcement. The court found that, once he read about the other lawsuit, Mr. Pomeroy had sufficient information "to create a duty of inquiry." *Id.* at 984.

Here, Hartford's surety bonds did not cover the same shipments as those being investigated, so it would be unlikely for Hartford to be following that action. In addition, as previously discussed, the Customs indictment was against two individuals who worked for Sunline—it was not brought against the company by name. Therefore, even if Hartford had established some sort of internet or court monitoring system to check for Customs suits against potential customers such as Sunline, the *Shen* suit would likely still have gone unnoticed.

On the particular facts of this case, the conclusion that Hartford knew or should have known of its protest grounds in time to have filed a protest under 19 U.S.C. § 1514(c)(3) is not correct; the trial court erred in denying jurisdiction on that ground.

## CONCLUSION

The judgment of the United States Court of International Trade is reversed. The case is remanded to the Court of International Trade for further proceedings consistent with this opinion.[1]

**REVERSED AND REMANDED**

---

[1] We offer no opinion on the merits of Hartford's protest grounds or other causes of action against Customs as set forth in Hartford's amended complaint.

# United States Court of Appeals
# for the Federal Circuit

---

**HARTFORD FIRE INSURANCE COMPANY,**
*Plaintiff-Appellant,*

**v.**

**UNITED STATES,**
*Defendants-Appellee.*

---

2010-1198

---

Appeal from the United States Court of International Trade in case no. 07-Cv-0067, *Chief Judge* Donald C. Pogue.

---

LOURIE, *Circuit Judge*, dissenting.

Because I conclude that Hartford had sufficient information on hand to put it on notice as to any potential claim that it may have had against Customs regarding the "Hubei entries" within the administrative protest period allowed under 19 U.S.C. § 1514, I respectfully dissent. The issue here is not simply when Hartford became aware of the basis for its claim, but rather when it *should have reasonably* become aware of the claim. *See St. Paul Fire & Marine Ins. Co. v. United States*, 959 F.2d 960, 964 (Fed. Cir. 1992) (a claim accrues when the aggrieved party "reasonably should have known" of the existence of a claim); *see also Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1577 (Fed. Cir.

1988) (a claim accrues when the aggrieved party "knew or should have known" that the claim existed). The question is whether Hartford reasonably should have known, based upon its knowledge of the criminal proceedings, that a full review of the proceedings could reveal information about the nature of those proceedings, including information that may have been relevant to the Hubei entries. I believe the answer is clearly yes.

Hartford acted as a surety for Sunline, an importer of frozen crawfish from China. During July and August 2003, Sunline executed eight bonds, insured by Hartford, on entries of crawfish imported into the United States. In November 2003, just three months after the bonds were issued, two of Sunline's officers, Shen and Lin, were indicted for violating US importation laws. These indictments were clearly public record. Then, in May 2005, Hartford learned from a third party of the *Shen* criminal case. It responded by taking no action on the matter for four months, after which it sought additional information on the *Shen* case. Hartford then found it reasonable to probe further into the criminal indictment of one of the officers of an importer for which it was acting as a surety.

Hartford argues, however, and the majority agrees, that it was not unreasonable to wait for four months to do so. I respectfully disagree. It appears that the importer had only two employees here in the United States. Oral Arg. at 16:00-23, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2010-1198/all. They were both indicted, not for some unrelated crimes, but for violating US importation laws, *i.e.*, falsely documenting imports of crawfish from China—the same product imported from the same country as the entries at issue here. On learning that information, no reasonable surety who insures identical imports

by the exact same importer would wait several months before taking any action.

Likewise, Hartford took no action following Customs' demand on June 22, 2005 for Hartford to pay duties owed on the Hubei entries. A reasonable surety, faced with an obligation to pay, would have taken some action. Hartford simply let the protest period pass without paying or protesting the demand. If anything, Hartford's non-payment on the entries it insured indicates that it was aware of problems at Sunline. After all, it had made Freedom of Information Act ("FOIA") requests on other Sunline imports well before Customs made its demand. Yet, the majority passes over those facts to conclude that a duty to investigate was not triggered during the entire protest period either. One question that neither Hartford nor the majority is able to answer is what actually motivated Hartford to conduct the *Shen* case investigation four months later, even though none of the relevant circumstances had changed and no additional information had become available to Hartford. The only reasonable explanation is Hartford's lack of diligence earlier.

The majority relies on our decision in *St. Paul* to decide that Hartford's claim did not accrue until it actually made a further investigation into the *Shen* case file and, as a matter of fact, found nothing specific to the Hubei entries. In *St. Paul*, however, the appellant became aware of its contract defenses only after Customs disclosed a relevant Customs' internal investigation of the importer, and hence could not have been reasonably expected to know of its claim and therefore protest any earlier. 959 F.2d at 963-64. The facts here are very different. Sunline's officers were criminally indicted, publicly, and Hartford was directly informed about the charges by a third party. Hartford "should have reasonably known" of any claim that it had back in May 2005; it

was simply negligent in taking any action on the knowledge. The Court of International Trade was therefore correct in holding that the information that Hartford received was sufficient to trigger a reasonable surety to action and that Hartford should have exercised more diligence in the matter once it learned of the indictments.

By finding jurisdiction under 28 U.S.C. § 1581(i), the majority excuses Hartford's failure to act in a reasonably prompt manner and thereby grants Hartford a second bite at the apple that it does not deserve. In doing so, it inadvisedly expands the scope of section 1581(i) to allow claims that could and should be brought under section 1581(a). *St. Paul*, 959 F.2d at 963 ("[I]f a suit could be maintained on a protestable decision under both sections 1581(a) and 1581(i), a party could circumvent the time requirements associated with a protestable decision and completely evade the administrative review process."). I therefore respectfully dissent. I would affirm the lower court's well-reasoned decision finding no jurisdiction in this case.